for circuit. I proceeded police. All right, next case, United States versus Clark. Mr King will hear from you. Thank you. Your Honor's may it may please the court, Mr King on behalf of Mr. William Clarke, who brings forth for claims before the court today, whether the district court jury instruction improper with regard to attempted enticement, whether there's a prejudicial violation of rule 30, the rules criminal procedure, whether there is an improper denial of motion to suppress the inventory search and also a sufficiency argument as to whether the court should have granted. It's the defendants rule 29 motion. I wanted to focus on the first three arguments starting from a reverse order unless the the court had a particular way. Public counsel should address them with regard to initially the inventory search. The record is devoid of what procedures were followed, whether the inventory search was done properly at all. What is your allegation about what was done wrong on the inventory search? Our allegation of our position is that there has to be evidence of standardized procedures that were used. I want to know what was forget the procedures business. I want to know what was done on the search that you object to. There is a there's no information fairly in the record on how the search was conducted the and the in the in the trial complaining about what's what's the complaint was obtained. There is information that was obtained during the inventory search that there was a computer in the back of the car. It's our position that when that computer so it was relayed to agent Eiler while either while she was interviewing the defendant after his arrest or some sometime about that time that there's a computer in the car that led her and our view or at least it was in the backseat. No, I believe it was actually in the trunk, but it could be incorrect about that and agent Eiler learning. This is a computer goes and gets a search warrant about five to six weeks later after the car has been impounded and is in. All right. Let's go back. Let's go back to the inventory search. Forget the that they've during the inventory search. They see a computer and is there any problem with that? There is it's it's our position is the burden of the government to show that it's property. I just don't forget the law. I just wanted to tell me is there anything wrong with discovering that computer during an inventory search? There is nothing wrong with discovering a computer during an inventory search or anything else in the car. If an inventory search was in fact conducted within applicable standards in this case with the Virginia State Police. What do you allege was done wrong? The we allege against any standard. There is no inventory search. There's no proof of inventory search that was properly conducted in this case. There is a there is conclusory statement that was made by agent Eiler. There's an inventory search conducted and asked about the way this is going. Seems like you're not trying to suppress the computer. It's what's on the computer. Really? You don't like but to get there. You're saying that the existence of the computer would not have been discovered. I assume had you not done what you alleged to be in a proper inventory search. Is that is that the basis of it? That that that is correct. If there's not an inventory search. Answer the judge Niemeyer's question right then was when he asked the question was anything legal about finding the computer? Well, there's nothing about finding computer is the inventory search. And I don't quite follow that. That sounds like to me. Your problem is they found a they saw a computer. They got a computer. Therefore, they see the computer and it's fairly common knowledge that you got computer. You probably can find in these kind of cases something on that computer. So it's your argument that you are challenging the fact that they were able to determine this computer actually existed. Is that the is that your argument through a search that you say should not have been conducted? Well, there wasn't conducted properly. It's our assertion that there's no evidence that the search was conducted properly at all. And there's think an inventory search is it's basically looking through the car and listing what's in there there and that's all it is. You don't have to seize anything. You don't have to take anything. It's basically looking through the car and seeing what's there. Now the question is what are the procedures? Do you have to keep it documented and so forth, but I'm just trying to find out what your problem is. They say find a computer in the trunk. Every inventory search is going to find that computer in the trunk. Now, what where do we go from there? They get a warrant. Our position is without the government is burdened that even a proper inventory search was done. We can't distinguish on these facts where there's just a general rummage for evidence that the police went in the car to see what was in there. And when the difference between a rummage for evidence and an inventory search. They're going to open up the car. They're going to open up the compartments. They're going to find everything that's in there for a lot of reasons, but mainly to establish what's there. So it's not stolen. Maybe to have a record of what they seized. You come back later and say, oh, I had three bricks of gold in there and they say, no, we have an inventory search shows. There's no gold in there. And that's the and I think your Honor is exactly right. Apart from it, regardless of whether they follow that, let's say they didn't. They look through the car and they see the computer and they doing an inventory search. See what they've got there and they didn't follow some of their procedures. Where are you heard on this? They find the computer. Any search is going to find it inventory search and they get a warrant. So they go get the warrant. They don't open the computer until you get the warrant. An illegal inventory search or a general rummage for evidence. And the court is right. There is the reasons for that that are outlaid by the Supreme Court. I understand, but I just can't get my handle. I'm looking at this. I thought it's your weakest argument. I must say, I can't figure out you started out with it, but I can't figure out what is the harm they can look in the car. They seized the car, took it into the garage or wherever they take it and they can look through the car because they weren't led to very damaging evidence. It led to the existence of a computer. It also led to the existence. I know, but it's not illegal to go rummage through the car. That's my point. They're allowed to conduct an inventory search of what's there. And as a matter of fact, they should. Good police practice is to look through the car and list what's there. Our position is there's no, there's not, there wasn't proper evidence for the trial court that inventory search was, was even conducted. There was just conclusionary statement by an officer. That's what they stated it was. The agent Eilers stated that and on cross-examination, she didn't know who conducted it. She didn't see it. She was inside a van. She didn't know what procedures were followed. Didn't even know what the Virginia State procedures were. She didn't know any of that. But she said an inventory search was conducted, didn't she? She said that and on cross-examination, it was apparent that she really didn't know. It's your submission that you have to follow certain written procedures that have to have been known and have to be usual to conduct an inventory search, right? That is the, that is the position. Now, the jurisprudence indicates there can be variations from that. It doesn't have, there is some discretion that officers have when they're conducting inventory search. But we mentioned the Hope case from, it is from the Fifth Circuit, but there's no indication there as to what procedures even existed. Likewise here. Let me ask you this, under any inventory search you can conceive of, the police are all, as long as it's, they have a procedure for conducting it. I mean, the idea is you want some normalcy about it. Exactly. But they can open up the console. They can open up the glove compartment. They can open up the trunk and list what they find. Look in the back seat. Look in the front seat. Look under the seats and list what they find. The idea is to create some record. Also, I suppose it could even be something dangerous in there or a contraband or whatever. But they, in this case, they, according to them, conducted an inventory search and found a computer. That ended it. That's all. And there's nothing illegal about that. The question then is they did get a warrant and operated, looked in the computer, pursuant to a warrant. I don't see the rub. I understand. Tell me what the prejudice is. The prejudice is that there is, the government's burden, there's an inventory search conducted. They didn't meet that burden. There is a conclusory statement by an agent who didn't see it conducted, didn't know the standards, didn't know anything about it, didn't know the trooper who did it. And then she's told there's a computer in the car. It's obvious in looking at the warrant, what she wanted in that warrant was to go get that computer. Of course. Because she knows that you need a warrant to open a computer these days, or at least sometimes. But if there's an illegal search and that leads you to go get a warrant. It's not an illegal search. An inventory is not an illegal search. But the government did not establish that. Is it a proper inventory search? The government did not establish that. With regard to the, it was the second issue cited in the brief, as to whether there's a Rule 30B violation. It's our position that the record is clear that there was a Rule 30B violation by the trial court. Defense counsel specifically asked which instruction that the court was going to provide with regard to attempted enticement, anticipating there's two instructions that were before the court. Which was the main one that she was, trial counsel were interested in? It was on the attempted enticement instruction, because that was the heart of the defense in this case, as to whether it was mere. Arrangement. Arrangement or the. Persuasion, right. The appellate was attempted to achieve. And the judge did give an instruction on that. And counsel argued the whole issue. That was the argument made to the jury. There was nothing, nothing changed in the argument. So the question, I suspect, is if there was a violation. And it may, you may be right on it. You're supposed to, it'd be much better to give the exact formulation of the jury instructions. The question is, were you harmed in this case? Yes, and the question I, we believe here is one of prejudice that there was a violation. The, starting off first of all, and this is just from a general due process viewpoint, defense counsel, in this case, prior to the closing argument, didn't know what instruction was going to be given. And ultimately, a different instruction from both the government and the, and the, that was proposed by the defense was given by Judge Hilton. And that fully deprives counsel on what he can argue. And in this case, the, the main point of defense was to achieve, was that the, the defendant said, well, mere arrangement to have sex with a child. And there is evidence in the record that there was just arrangement. In fact, the. I thought the defendant's attorney did make that argument. The central argument was made to the jury. It was in part, but also that not knowing what instruction was, was going to be given, defense attorney also argued the common definition of the deuce is just a cause. And that's something that vitiates the argument. And defense counsel doesn't know what instruction is coming down from the court. If the proposed jury, jury instruction that the defendant wanted was given, which was essentially taken from the Hyde case, but also from the Fourth Circuit's Engle case, where a mental state needs to be achieved over the child, there would be no reason to start talking about inducement and what the, the, the common definition of that. And that is prejudice. And there is a, there is just no way for defense counsel to know on these facts what instruction was coming. And one that, that was ultimately given was, was different than either of the proposed instructions. And in our view, that is, that is something that's prejudice. It was clearly unfair to defense counsel when they directly asked what instruction the court was going to give. The court said, well, you'll find out when I instruct the jury. Closing arguments are made and then a different instruction is given. Now, there is that, that instruction going, going to the, the, the next, the next issue, it's, it's our view, doesn't ultimately fairly state what the law is. It is taken from, this is the intensive enticement instruction that the, the court had ultimately ended up giving. With regard to that instruction, there is ambiguity in it because it uses the term induce and it doesn't fully describe what that means. And one meaning of induce can simply mean to cause. And while the court did say in its instruction, in the full instruction, it's on page 20 of the brief, and I could find it in the joint appendix as well, it's at 217, states the terms persuade, induce, and entice should be given their ordinary meaning, and ordinary uses of words are effectively synonymous. And the idea conveyed is one leading or moving another by persuasion or influence as to some action or state of mind. Now, we acknowledge that it does indicate influence of state of mind when it, in order to violate this statute, there must be a mental state that's achieved over the trial or at least in this case attempted to be achieved over the trial. But it's ambiguous because you can influence some, as to some action where that is going, what does that mean? That can be simply to, to cause. And so there is a, that instruction, in our view, is something that can be confusing to the jury and can lead the jury just to convict on causation alone. Well, it looked to me like counsel argued that, spent a lot of time talking about this, and had to transform the will on the part of the minor. It's not arranging to have sex. That's what he was arguing to the jury. He argued everything that he was requesting. He, he did argue that. But he also, he also defined the term induce as a simple, simply to cause. And that is something that, it's our position, that if he knew that his jury instruction was going to be given, that he proffered with the court, there would be no reason for him to do that, which would end up weakening his case, invitiating imparted argument. And there's no reason that the jury would not believe that what he said with regard to induce was, was the truth. It would appear that I'm out of time. If the Court doesn't have any additional questions at this moment, I reserve the rest of the time for rebuttal. Thank you. Mr. Carteson. Morning, Your Honors. May it please the Court, Christopher Carteson for the United States. The key common sense principle underlying the so-called adult intermediary rule that's now been adopted by every circuit to have considered it is that a defendant can violate 18 U.S.C. 2442B by indirectly knowingly enticing, persuading, coercing, or inducing a minor to engage in prohibited sexual activity. That's a real interesting issue in this case. Yes. The government agrees. And in this case, the district court properly instructed the jury that Mr. Clark could be convicted if he indirectly violated the statute. And overwhelmingly, overwhelming evidence supports his conviction under that standard, and the government urges this Court to join its sister circuits and adopt the so-called adult intermediary doctrine for the Fourth Circuit. Now, I'd be happy to go through the evidence that the government believes supports this indirect theory of liability. But in the interest of time, I would just unless the Court has questions about the evidence, I would especially direct the Court to the disks that were submitted along with the record of the phone recordings and the Skype conversation between Mr. Clark and the agent, Jay, in this case. Did you need the computer to get did you need to get into the computer to get that information? No. Well, that's what I have never really understood about the because I'm not sure there is evidence in here that there was the proper background lead for the inventory search. Maybe you would like to speak to that issue because I thought you did. The government, it was the government's obligation. The government had to prove that they followed procedures that were given, and I don't see any proof like that. But is that error harmless given all this other evidence you've been just talking about? I think the answer is yes to all of the above, or no, or the government wins to all of the above is my answer, and I'll go through. Okay. Well, so when did they establish the necessary predicate establishing that this was, in fact, an inventory search under established proper guidelines? So it's not in the joint appendix. Aha. Well, you know, that would be a really good place to put it. It would have been a great place for the document to be. The original point when the defendant brought this up in front of the district court was that they did not have evidence of the inventory search. The government, in its response to the motion to suppress, and this is the government would be happy to submit a supplemental appendix if the court. Why don't you do that? Certainly we'll do that. Since that's the main point counsel is raising, why don't you within 10 days submit enough copies so they can send it to us? I will do so, Your Honor, and just. Are you referring to the attachment to that motion? That's correct. Did you enter into evidence? That was the next thing that would be. A problem. Assuming that that is a problem, that the fact that it was not admitted at the suppression hearing, and assuming that the defendant doesn't have a preservation issue because here they've not really challenged the district court's evidentiary finding that an attachment to a filing is not sufficient. In this case it doesn't matter. Because? Because there is an independent source for the warrant. Any investigation of a defendant who had engaged in the conduct that Mr. Clark had engaged in would have resulted in a warrant to search the car in which he arrived after communicating with the undercover, after saying that he would be bringing toys, after he said that he'd be planning to stay overnight. And so that's just a common background fact. On the disk that was submitted with the record is also Mr. Clark's interview that he did with the agent while the inventory search was being compiled. And during that interview he What are the documents in support of the inventory search show? They show that there was an inventory search performed, that it was done on October 11th contemporaneously with Mr. Clark's arrest. They show the items that were identified in the vehicle, including a computer. Does it show the authority under which the inventory search was launched? It's a Virginia State Police form document that was signed by Officer Michael Brown, who is the officer who testified that he conducted the inventory search. On the computer, however, we have verifiable proof that the agent who obtained the warrant, that Special Agent Eiler, learned about the computer not through the inventory search, but through her interview with Mr. Clark that was going on while the inventory search was being done. At the end of the interview, which is in the recording, Mr. Clark says, there was a computer in the car and the agent But leaving all of that aside, if there was no computer and there was no getting into the contents of the computer, if you weren't allowed to look at any of that, wouldn't this introduction of the computer evidence be harmless error, given all of the other evidence the government has? Putting it all aside, because the evidence didn't come from the computer. The evidence came from the agent who was gathering it on his side. So the chats, the Skype recordings, the phone calls, the e-mails, those weren't collected from Mr. Clark's computer. This was a proactive investigation. So because they were being sent to a government agent, he had all of them himself. We didn't need Mr. Clark's computer.  He being the government agent, J. And on the point about the independent under Murray, there's two prongs, as the Court knows, and it's whether the agent would have sought the warrant without the allegedly tainted evidence and whether the magistrate would have approved it. And in this case, the warrant, which was attached to also, unfortunately, is not in the supplemental, not in the joint appendix. Why is the appendix so thin? I don't know. If there's a suppression being challenged on appeal, it seems to me all the materials relevant to that should have been included. That's absolutely right, and the government shares that burden of putting the appendix together. I wasn't personally involved in putting it together, but it should have been in there, and it's on the government as much as it is on the appellant. Before you leave the dope on a meteorary basis that you brought up, what, you know, this secret has not gone yet, several circuits have, what would be the basis that you think we should, if we were to consider something for doing that? What the statute targets is an effect on the intent, will, mind of the child, of the underage victim. And what the circuits that have gone that way, all the circuits have said, is of course you can induce, entice, coerce, persuade someone indirectly. And you're not necessarily acting on the adult. That's not the point. The point is that the defendant knows that by using the parent or using the adult guardian, it need not be a parent, using the older brother or sister, using the preschool teacher, using whoever has influence and control over the intended victim, that the defendant can entice, persuade, coerce, induce, in just the same way as if the defendant were directly in doing all of those things. Do we have the direct attempt here? No, there was no direct attempt because there were no communications with, any direct communications with the fictitious children. Didn't the fictitious children get on the phone to say hello or something? No. No, they never did. He wanted them to. He requested it, which goes, in the government's view, strongly to the indirect attempt because certainly if All we need is a direct attempt. I'm sorry, Your Honor? A direct attempt, even though you don't have a direct communication. And so if there's a direct attempt, is it not sufficient if you say, I want to speak to this child or I want to see the child? Is that sufficient for a direct attempt to use the parents as an enemy? The reason I'm asking is because there are several bases upon which the circuits have looked at, and that seems to be the narrowest of the bases there. And if it exists here, I mean, that's here in this case. Whether it goes to others may be a question of the day, but that seems to be if it does exist. In many of the cases where there are direct attempts, it's where there's a fictitious child. And but I take the Court's point that You do have a fictitious child here. You do have a fictitious child, and you're certainly attempting to reach the fictitious child. He has to do it. But he didn't actually have communications with the fictitious child. That's direct communication. That's not an attempt. But the government hasn't made that argument before this very moment. And I don't think that the Court needs to go that far. I'm just trying to say if you want us to go with this because the circuit hasn't gone, what is the basis upon which the circuit should use here? And that's the narrowest of the bases that's put forth by the different circuits. I would say that there's some danger in saying that it's got to be a communication targeted at an attempt. So the only way to get indirect attempt would be to attempt to reach the child. I think there are many situations where there need not be attempts to reach the child or attempts for the child to even know that there's someone trying to entice them. For example, the parent or preschool teacher who the defendant says, Help me groom these children, generally. Take these steps. Talk to them about sex. That could, under certain facts, be an indirect case. But in that case, there wouldn't be any direct communications or direct attempts to reach the child. So I think the point is, whether the government would urge the Court to go, is that a defendant can violate the statute by knowingly seeking to and attempting to entice, coerce, persuade, or induce a child and need not have direct communications with the child. Unless the Court would like to hear anything else about the Rule 30 issue, I would flag that this is obviously not an ideal way to do instructions, but the harmlessness standard here is clearly met. It's a violation of the Rule, right? I'm not able to concede it's a violation of the Rule. Just under Robertson, Abushi, Horton, which are some of the cases that we cite, what the Rule requires is for the district court to provide instructions about how it's going to do, provide information about how it's going to do the jury instructions and give counsel an opportunity to argue intelligently. Were you trial counsel here? I was not. I just think it might be a good idea if the district court told the lawyers what the instruction was going to be. Maybe you can bring that message back. The government agrees wholeheartedly with that. I understand your argument. You don't want to say it's a violation of the Rule, but your argument to us is at least a better position to be assuming it was. I mean, you can name whatever you want. Even if it was. Your argument has to be, and I'm not sure it's adequate, but your argument has to be there were requests for instruction on a particular point, and the judge says, I'll give that. As a matter of fact, every request made by defense counsel, the judge said, I'll give that, and assured counsel that they would get an instruction on that point. The problem was the formulation of the instruction was never shared, and when that was requested, the judge said, well, you can object after I do it, which is not what I don't think what the Rule anticipates. You have to argue that the information the judge communicated was sufficed, but that would be a sort of defeat of the Rule, I think. Which is why I urge the Court to look carefully at harmlessness here. And as Your Honors have already discussed, in the defense opening, and this is at Joint Appendix 84, defense counsel argued, you must decide if Mr. Clark attempted to cause the assent of a minor to engage in sexual activity through persuasion, inducement, coercion, or enticement using the Internet. I think every aspect from my analysis, every aspect of what was requested was argued to the jury. And it's a hard thing to say the jury wasn't considering any aspect, but I think the inducement, enticement, whatever language you want to rest on, I think inducement was the strongest one for the prosecution. Do you agree with that? I'm not sure. Do you agree with what Judge Nemar just said? What do you mean by inducement being the strongest one for the? As opposed to coercion and some of the other. The statute has several terms. And I may not yet understand what you mean by inducement being. This case is most, is best proved under the inducement word as opposed to the other words. I'm not sure I would agree. Which word do you pick? You have an 8-year-old and a 9-year-old. No, tell me in the statute, which provision do you think it's better proved under? Coercion is a powerful force here. You have two children. Coercion? These kids apparently were raised to participate, according to the officer, raised to participate in this sex. It wasn't coercion. Well, it's coercion in the age differential. But this guy was basically, they were talking about, well, does the boy do this? And the defendant said, oh, boy, that's what I want. I want to be working with the boy. The undercover agent said, well, I'm more into the girl. But it was he, the portrayal was that the children were willingly participating in this, and you might be able to rely on coercion from the age differential alone, but not from some communication. Well, only, I think you're saying only coercion because their father was. With the record, the fictitious children, the daughter, the father started raping her when she was 4, and they did this every week for him. No, no, but in this incident, the father was basically saying, I have these children available, and they do this now as a practice. It's a family practice, as perverse as it is. And the defendant assumes that these children are readily doing it. There was no suggestion, let's tie them up or do this or that. The idea is, as a matter of fact, there was even an invitation to try to persuade the boy to do something beyond what he had been doing in the past. And I don't think that we're disagreeing much here. All I mean is, I think, under these facts. Well, I withdraw my question. I thought you'd rather. What difference does it make to you? It doesn't make any difference. Yes, I agree with him. That would have been the wiser approach. All right. Thank you very much. Thank you, Your Honor. Mr. King. Thank you, Your Honor. I wanted to. Just to get a mechanical point here. I guess you appreciate that if you're raising a motion to suppress, you should see to the fact that the record with respect to that should get in, the motion, the arguments, and all that, and the papers. I agree with that. Okay. We're going to be getting it. I think generally the district court pleadings are not attached in the appendix, but I understand the. Well, it's what we review. The record is there. We can always go back and look at a record, but the whole purpose for the JA is to facilitate review by the court. I agree, Your Honor. With regard to what the attorney indicated about Trooper Brown testifying, Trooper Brown, my recollection of the record, did not testify. There was no state trooper that was put forward. Case agent Eiler, who is the person that interviewed. That's what he said, that there was a state form that was used, and Trooper Brown signed the form. The U.S. attorney in its pleading attached a state form signed by Trooper Brown to the pleading that was never introduced into evidence. Well, now, in order to suppress and you attach that, isn't the court able to find that unless somebody objects to it? Well, it's. I mean, I don't know what the. You guys haven't presented the record. We'll review the record, but I must say, based on what I saw here, there was an inventory search conducted, a computer was found, a warrant was issued, and it would never make clear to me how there was anything wrong with that. Now, you did say the inventory search was not proper, but no one explained why. Because there was no evidence that an inventory search was, in fact, conducted. There's no procedures that were presented to the court. Well, what do you think that form is? I'll have to look at the form. Let's. I don't want to take your time up on that. Well, it's our position that those forms need to be introduced into evidence and be before the court, and they were not. And a candidate of the court and the. Did the court see it? I can only assume that the court would have read the pleadings. Well, you have to assume that. So it was attached to the motion, right? The U.S. Attorney did attach it to their motion, and the defendant did attach to his motion the operating procedures of the Virginia State Police. Okay, so the court had all that before it, and in granting or denying the motion to suppress, we have to assume the court read the pleadings, don't we? Unless the court says, I haven't read anything, but this is my ruling. We have to assume that the court read the pleadings. But in assuming that, none of that was introduced into evidence. And it's our position that that would need. There was no witness that testified. No, this is not a trial. This is a motion hearing, right? I agree with that it's a motion hearing, certainly. With regard to the harmless error that was argued in part by the United States, with regard to the inventory search, there were very damaging things that were found in the vehicle. The computer itself, there's really nothing that was on the computer itself that was introduced into evidence. The primary evidence in this case, we mentioned what categories it fell into. It was largely the statements of the defendant, but it was also very much corroborated by what was found in the car. There was a bag of candy that was found in the car, and while the defendant presented an explanation for that, the undercover officer directly asked the defendant to bring that. And there was a picture of it that's in the joint appendix, and that would be something that certainly a jury could find that was for inducement. And there was also other things that were found in the car that corroborated the government's case. That included notes with the names of the children that were on them and also sexual paraphernalia that all went to do that. With regard to whether this was a ‑‑ I want to adjust whether this was a ‑‑ there was also, as Judge Niemeyer was mentioning, there was significant evidence here that this is an arrangement-type situation rather than Mr. Clark attempting to overbear the will of the child or transfer the will of the child. And I wanted to just direct the court, and this is to page 267 of the joint appendix, and it's at 339, and it's down at the bottom of the page. And it's the U.C. directly stating to the appellant in this case, and it was super illegal for me to offer my kids for sex. That is, and it's an arrangement for sex. For all those reasons, we ask the court to vacate the decision of the trial court based on our arguments and if the court found that the Rule 29 motion is improperly denied to reverse this conviction. Thank you. All right. Thank you very much. We'll adjourn court for the sine die and come down and recounsel. This Honorable Court stands adjourned sine die. God save the United States and this Honorable Court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, James A. Wynn Jr.